Argued and submitted May 22, affirmed on petition; remanded in part and
otherwise affirmed on cross-petition August 8, 2001

## MOUNTAIN WEST INVESTMENT CORPORATION,
an Oregon corporation,
*Respondent,*

*and*

## Milton ROBINSON,
*Respondent - Cross-Petitioner,*

*v.*

## CITY OF SILVERTON,
*Respondent below,*

*and*

## NORTH WATER STREET, LLC,
*Petitioner - Cross-Respondent.*

2000-093; A113824

30 P3d 420

E. Michael Connors argued the cause for petitioner - cross-respondent. With him on the briefs were Christopher P. Koback and Davis Wright Tremaine LLP.

Donald M. Kelley argued the cause for respondent - cross-petitioner. With him on the brief were Patrick E. Doyle and Kelley & Kelley.

No appearance for respondent Mountain West Investment Corporation.

Before Haselton, Presiding Judge, and Wollheim and Kistler, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

Petitioner, North Water Street, LLC, petitions for *judicial review of a LUBA final opinion and order remanding* a City of Silverton Planning Commission decision. LUBA remanded the decision for a determination of the extent to which the city zoning ordinance provision controlling lot line adjustments requires consideration of the proposed use of the property. Cross-petitioner Milton Robinson seeks judicial review of the same decision because LUBA did not consider certain of Robinson's assignments of error as intervenor-petitioner before LUBA. We affirm on the petition and remand in part on the cross-petition.

We take the relevant facts from LUBA's order. The subject property encompasses 105,000 square feet and includes two lots. It is zoned for multi-family residential use. North Water Street asked for a lot line adjustment to eliminate the common boundary between the two lots in order to accommodate a 62-unit residential care facility. The Silverton planning director approved the request.

Robinson sought review of the decision before the city planning commission. He argued that the lot line adjustment did not comply with relevant portions of the city's development ordinance and asserted that the planned assisted living facility would not comply with the city's comprehensive plan and implementing regulations.

The planning commission denied the appeal and affirmed the planning director's decision. The planning commission considered the lot line adjustment only; it did not consider whether the proposed residential care facility would meet comprehensive plan and implementing ordinance requirements.

Robinson and Mountain West Investment Corp., which participated in the proceedings before the city planning commission, petitioned to LUBA, raising 11 assignments of error. Three of those assignments—the first, third, and sixth—challenged the city's failure to consider the proposed use of the property, particularly by reference to Silverton Zoning Ordinance (SZO) sections 12.04(B) and (C). The

second, fourth, seventh, ninth, and tenth assignments variously challenged the city's alleged failure to address issues regarding the proposed facility's compliance with SZO 12.04, and the city's alleged failure to render adequate findings demonstrating that there are adequate facilities to support the proposed use. The fifth, eighth, and eleventh assignments asserted that the city's decision is not supported by substantial evidence because the record lacks evidence about the proposed assisted living facility.

LUBA reviewed SZO chapter 12, controlling lot line adjustments, and concluded that the ordinance requires, as part of the analysis of a lot line adjustment, some consideration of the proposed use for the property. Specifically, LUBA determined that, at a minimum, SZO 12.04(B) requires inquiry into the proposed use in order to determine whether adequate public facilities are available to support that use. Accordingly, LUBA sustained the first, third, and sixth assignments of error and remanded the decision to the Silverton Planning Commission "to determine the extent to which the criteria in SZO 12.04 require consideration of the proposed use" when considering an application for a lot line adjustment. Given that disposition, LUBA did not review the merits of the remaining eight assignments of error.[1]

North Water Street petitions for review of LUBA's decision, arguing that the lot line adjustment criteria of SZO chapter 12 do not require consideration of the use proposed for the property. Robinson cross-appeals LUBA's "denial" of five of the original 11 assignments of error. We review LUBA's denial of the assignments of error asserted below to determine whether that denial was "unlawful in substance," *i.e.*, if it represented a mistaken interpretation of the applicable law. *See* ORS 197.850(9)(a).

SZO 12.02 sets out the application requirements for a lot line adjustment.[2] Those requirements include a demand for certain information from the applicant, including a "site

---

[1] As described below, 175 Or App at 567, LUBA explicitly stated that it "[did] not consider" the fifth, eighth, and eleventh assignments and, although ostensibly "denying" the remaining five assignments, did not, in fact, address their merits.

[2] The "purpose of a partition or a lot line adjustment is to allow for one or more parcel sizes to be adjusted from their original size." SZO 12.01.

plan of the property showing proposed use of the property." SZO 12.02(E). In addition, the planning director may

> "determine that supplemental information may be required which will better address specific pertinent issues pertaining to the development of the property. This additional information may include: a detailed engineer's drawing, a report from a wetlands biologist, a soils report, or traffic engineer's report." SZO 12.02(F).

SZO 12.04 lists the lot line adjustment review criteria and requires findings to substantiate compliance with the following:

> "A.   Each parcel shall meet the minimum lot and dimension standards of the applicable zone district. In no instance shall a parcel be created, or a lot line adjustment made which will be inconsistent with any lot requirement of the applicable zone district without a concurrent variance application being submitted and approved.

> "B.   Adequate public facilities shall be available to serve the existing and the newly created parcels or shall be made part of the conditions of approval.

> "C.   Proposal shall be compatible with all applicable policies within the Silverton Comprehensive Plan, if any, and with the requirements of the underlining [sic] zone district.

> "D.   A 'redevelopment plan' shall be required for any application which leaves a portion of the subject property capable of being replatted.

> "E.   With the exception of one parcel, each parcel shall have direct access onto a public street. One parcel may be allowed to have its access off a private 18 foot wide access easement provided that the access easement is recorded with Marion County."

The zoning ordinance also permits the planning commission or the director to attach conditions to an approval of a lot line adjustment. The conditions are those "deemed appropriate to ensure compliance with the criteria as specified in Section 12.04." SZO 12.06. The general requirements for conditions are as follows:

"A. The conditions are reasonably related to impacts caused by the specific development proposed on the subject property; and

"B. Conditions will serve the purpose of mitigating any adverse impacts which may be associated with the proposed use of the property; and

"C. The conditions are based upon policies within the Urbanization, Open Space Cultural and Natural Resources, Transportation, and or Housing Elements in the Comprehensive Plan or other standards adopted by the City of Silverton." SZO 12.06.

That section is complemented by SZO 12.07, which includes a nonexclusive list of specific matters that may require conditions.[3]

LUBA found SZO 12.04 to be "ambiguous." Nonetheless, as noted, LUBA concluded that SZO 12.04 required consideration of the proposed use, "at least to the extent necessary to find compliance with SZO 12.04(B)." LUBA also rejected North Water Street's argument that any consideration of the proposed use is inapposite under SZO chapter 12 because such considerations fall within the purview of SZO chapter 18, governing design review standards.[4] North Water Street had urged LUBA to find that the proposed use had already been approved by the city under the design review procedure in SZO chapter 18. LUBA disagreed and concluded the design review process does not evaluate proposed uses of property, because it does not address impacts

_____

[3] The listed conditions include dedication of street right of way and utility easements, improvement of streets, bike paths and the like, provision for storm drainage, extension of public sewer, building setbacks, parking and other matters generally addressing public services and access. *See* SZO 12.07(A)-(F). In addition, SZO 12.07(I) states, "Conditions may require that all, or part, of the proposed development or use be deferred until the happening of certain events such as the availability to the subject property of a certain level of service."

[4] SZO 18.2.2 discusses site analysis and lists considerations that should be included in matching a development to the site. The ordinance specifically states that the "first step in any project is to analyze the site and design the project INTO the site." (Emphasis in original.) SZO 18.8.2 lists the application requirements. The section does not address land uses, but does require facts about the land, lot dimensions, access, exterior lighting, elevations, architectural drawings, a landscape plan, details of proposed structures and related information.

from the proposed use or the adequacy of the city's infrastructure.

North Water Street first asserts that LUBA's interpretation of SZO 12.04 is not consistent with the text and context of the provision. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). It particularly emphasizes that SZO 12.04 contains no reference to the proposed use or development of the property. In North Water Street's view, SZO 12.04(B) requires a determination that adequate public facilities be available to serve the parcels, but it does not require that there be adequate public facilities to serve any particular proposed use or development. Moreover, North Water Street maintains that, to the extent that SZO 12.04(C) requires that the "proposal" be consistent with the comprehensive plan and zoning district, "proposal" refers to the lot line adjustment itself, and not to the proposed use of the property.

As further contextual support for its position that SZO 12.04 does not require consideration of the proposed use of the property, North Water Street points out that the zoning ordinance includes separate approval procedures for variances and conditional uses. It reasons that, if the ordinance's lot line adjustment provisions require inquiry into the uses themselves, there would be no need for such other approval procedures.

Finally, North Water Street asserts that, because its proposed development is a permitted use in the applicable zone, the only expressly stated land use approval required is under SZO chapter 18, which governs design review. It further contends that it has secured design review approval and that that decision became final by virtue of Robinson's failure to pursue a timely appeal. *See Robinson v. City of Silverton*, 38 Or LUBA 785 (2000), *aff'd* 172 Or App 482, 19 P3d 390 (2001). Given those circumstances, North Water Street asserts, LUBA's interpretation of SZO chapter 12 sanctions an "impermissible collateral attack on the Design Review Decision."

■ We agree with LUBA that SZO 12.04 is ambiguous in that, although it does not explicitly require evaluation of the proposed use, it does demand that the city generate findings

showing that adequate public facilities are available to serve the parcels and that the "proposal" be compatible with all applicable policies in the comprehensive plan and with the requirements of the applicable zone. SZO 12.04(B) and (C). Conversely, it is difficult to reconcile SZO 12.04(B) and (C) with petitioner's view that the character of the proposed use is immaterial to the lot line adjustment process. That is, SZO 12.04(B)'s requirement of findings as to the availability of adequate public facilities is meaningless if those findings are rendered in a vacuum, without knowledge of, or reference to, the actual proposed use of the property. Obviously, the demands on utilities will vary depending on the kind and scale of use—a site with public facilities appropriate for a small house may not be adequate to serve a larger and more intensive use. Similarly, the requirement in SZO 12.04(C) that the proposal be compatible with the comprehensive plan and zoning district would be meaningless if the planning commission could not consider whether the particular permitted use was, for some reason, rendered unsuitable under the comprehensive plan or other land use control as a result of the change in lot configuration.

LUBA's understanding of SZO chapter 12 finds additional support in the context within which SZO 12.04(B) and (C) appear. For example, SZO 12.02(E) requires applicants to submit site plans "showing proposed use of the property." It is implausible that the city would demand such information without being able to make use of it. Moreover, under SZO 12.02(F), the city may require applicants to provide further information to "better address specific pertinent issues pertaining to development of the property. That additional information may include: a detailed engineer's drawing, a report from a wetlands biologist, a soils report, or traffic engineer's report." Again, it makes little sense that the city would create a mechanism for compelling the production of such information specifically in the context of the lot line adjustment provisions of the zoning ordinance if that information were immaterial to the lot line determination. Rather, we conclude, as we understand LUBA to conclude, that, as a contextual matter, the production of such particularized information pursuant to SZO 12.02 contemplates its consideration in

determining the propriety or suitability of a particular lot line adjustment.

We note, moreover, that SZO 12.06 authorizes the city to impose conditions "which are deemed appropriate to ensure compliance with the criteria as specified in Section 12.04." SZO 12.06 lists three cumulative, generalized criteria for such conditions.[5] The first two criteria state that conditions will address impacts caused by the "specific development proposed on the subject property" and serve to mitigate "any adverse impacts which may be associated with the proposed use of the property." SZO 12.06(A) and (B). The third cumulative criterion, SZO 12.06(C), requires that conditions be based on policies within portions of the city's comprehensive plan or "other standards adopted by the City of Silverton." Again, as a practical and linguistic matter, it is implausible that the city would so define and circumscribe its authority to impose conditions on lot line adjustments unless consideration of the proposed use were integral to the lot line adjustment determination.

Finally, and in a related sense, SZO 12.07's designation of specific matters that may be conditioned encompasses not only matters relevant to the parcel, regardless of the proposed use placed on it, but also addresses matters relevant to the planned use.[6] For example, SZO 12.07(E) and (F) permit conditions on building setbacks, parking and other attributes particular to specific uses. Indeed, and most tellingly, SZO 12.07(I) provides that all or part "of the proposed development or *use* be deferred until the happening of certain events such as the availability to the subject property of a certain level of service." (Emphasis added.)

In sum, the lot line adjustment review criteria in SZO 12.04 do not specifically state that the city should examine whether the planned use for the newly configured property is appropriate under the city's comprehensive plan and

---

[5] *See* 175 Or App 560-61 (setting out SZO 12.06).

[6] *See* 175 Or App at 561 n 3 (describing SZO 12.07). By its terms, the list of matters that may be conditioned in SZO 12.07 is not exclusive. Should the city find a need to impose other kinds of conditions, the only limiting factor appears to be that particular conditions must fit within one of the more general categories found in SZO 12.06.

zoning controls. Nevertheless, when construed as a linguistic and pragmatic whole, SZO chapter 12 requires such consideration. Without that use-specific inquiry, the city cannot meaningfully determine whether there are adequate public facilities available to serve the newly created parcels, *see* SZO 12.04(B), or whether the proposal will be compatible with the applicable policies of the city's comprehensive plan and the requirements of the underlying zoning district, *see* SZO 12.04(C). SZO chapter 12 requires the city to consider more than the placement of lot lines on a property map.

■ We proceed, then, to petitioner's "collateral attack" argument. As we understand it, petitioner contends that construing SZO chapter 12 to require consideration of the proposed use permits Robinson to revive his time-barred challenge to the design approval decision in another guise and in another forum. That is, petitioner asserts, we previously affirmed LUBA's decision that Robinson's appeal of the design review decision was untimely, rendering that decision final—and now Robinson will be allowed, in effect, to circumvent that result. We disagree. As amplified below, the design review process described in SZO chapter 18 and the lot line adjustment process governed by SZO chapter 12 address qualitatively different matters.

Under SZO chapter 18, the city conducts a review, largely of aesthetic matters, into how a project may appear and fit into a particular site. The ordinance includes a requirement for a site inventory that includes such matters as topography, access, soils, tree inventory, off-site impacts, natural drainage ways, utility locations, prevailing storm winds, and views. SZO 18.2.2. Those qualities may have some bearing on whether a particular use is appropriate for a site, but the considerations are more reasonably understood to serve what the ordinance calls the "first step in any project"—that is, an analysis of the site with the goal of designing "the project INTO the site." *Id.* (emphasis in original). The application requirements prescribed at SZO 18.8.2 seek information pertaining to how the proposed use fits aesthetically, as well as practically, into the site. Because it is largely a collection of aesthetic considerations without mandatory or particularized approval criteria, it does not address the more

quantifiable, and objectively determinable, criteria found in SZO chapter 12.[7]

Petitioner invokes our decision in *Jebousek v. City of Newport*, 163 Or App 126, 986 P2d 1244 (1999), *rev den* 329 Or 607 (2000), as support for its argument that a lot line adjustment does not implicate matters related to the specifics of the particular development. That reliance is unavailing. In *Jebousek*, we were not asked to review ordinance language such as that in SZO 12.04. Rather, the issue was whether a comprehensive plan provision addressing hazardous areas was applicable in a lot line adjustment proceeding. There, we agreed with LUBA's conclusion that the city's interpretation of the appropriate time to consider the comprehensive plan provision was correct under the review standard of ORS 197.829(1) and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). Thus, the issue, and analysis, in *Jebousek* was materially different.

Finally, we are not unmindful of the frustration an applicant might experience if, after having obtained final design approval, the project nonetheless runs afoul of the lot line adjustment process, particularly if the resolution of a lot line adjustment is based on consideration of a proposed use that passed muster in the design review context. However sympathetic that frustration, we emphasize again that the design review and lot line processes are separate under the city's code. Consequently, as the SZO is configured, applicants must anticipate that, in some instances, a use otherwise permissible on a particular lot may be rendered unsuitable on a newly configured lot following a lot line adjustment. The city's code does not lend itself to automatic approval of a newly configured lot if the lot change would put the otherwise acceptable use in conflict with the site or with the city's comprehensive plan and zoning controls.

---

[7] We do not mean to suggest that there is no overlap in the matters to be considered under the lot line adjustment and design review sections of the city's code. We think it is clear, however, that the two procedures are different and, to the greatest extent, address different matters.

We turn to Robinson's cross-petition, which challenges LUBA's apparent "denial" of the second, fourth, seventh, ninth and tenth assignments of error before LUBA. With respect to those assignments, LUBA stated:

> "Our disposition of the first, third and sixth assignments of error, above, requires remand to determine the extent to which the requirements of SZO 12.04 require consideration of the proposed use of the property. The city's interpretation on remand is necessary to resolve petitioners' arguments regarding the scope of the findings required under SZO 12.04. Therefore, we do not address the merits of those arguments here.

> "Petitioners' second, fourth, seventh, ninth and tenth assignments of error are denied."

Robinson argues that, instead of "denying" his assignments of error, LUBA should have said it would not consider them because it was remanding the city's decision. That is, Robinson characterizes LUBA's "denial" to be a substantive rejection of the merits of his assignments rather than dispositional shorthand for "because we are remanding for reconsideration on other grounds, we need not address the remaining assignments * * *."

We agree with Robinson that LUBA's choice of words was unfortunately and potentially misleading. Considered in context, it is clear that LUBA's opinion did not address the merits of Robinson's second, fourth, seventh, ninth, and tenth assignments of error. Consequently, LUBA's "denial" disposition cannot be squared with its (non)discussion of those assignments of error. We remand for LUBA to explain the relationship between its treatment of those assignments and its disposition or to modify its disposition of those assignments of error.

Robinson also challenges LUBA's treatment of his second and fourth assignments of error to LUBA. He argued to LUBA that the Silverton Planning Commission's findings did not discuss public facilities. Robinson contends that such discussion was necessary regardless of the level of use planned for the property. That is, Robinson asserts that the adequacy of public facilities is a matter for consideration under the lot line adjustment criteria regardless of what use

is planned for the property. In Robinson's view, the city was required to address all issues regarding compliance with particular approval criteria.

LUBA did not err in declining to examine the planning commission's treatment of Robinson's challenges, which are the subjects of the second and fourth assignments of error. As noted, LUBA remanded the decision for a determination of the full extent to which SZO chapter 12 requires consideration of the nature of the proposed use when making a lot line adjustment, and we have affirmed that disposition. The outcome of that exercise on remand will require the city to reconsider its application of SZO 12.04, including the public facilities criterion in SZO 12.04(B). It is entirely likely that the planning commission will generate new findings based on reexamination of that criterion, as well as others. Given that posture, LUBA did not err in declining to address the correctness of analysis and findings that may well be superseded.

Affirmed on petition; on cross-petition, remanded for clarification of disposition of Robinson's second, fourth, seventh, ninth, and tenth assignments of error; otherwise affirmed.