Argued and submitted April 14, affirmed July 14, petition for review denied December 9, 2021 (369 Or 69)

Larry KINE,
*Petitioner,*

*v.*

DESCHUTES COUNTY,
Elkai Woods Homeowners Association,
Elkai Woods Fractional Homeowners Association,
and Seventh Mountain Golf Village Association, Inc.,
*Respondents.*

Land Use Board of Appeals
2018130; A175462

496 P3d 1136

Petitioner seeks judicial review of a final order of the Land Use Board of Appeals (LUBA) that affirmed respondent Deschutes County's denial of petitioner's request for verification of 11 lots of record and its conclusion that the property described in that request was a single lot of record. Petitioner argues that LUBA erred in concluding that a subdivision process that designated the subject property "Not in Plat" vacated the interior bounds of the subject property. *Held*: When, as here, a subdivision plat overlays an entire tract of land, that plat operates on the entirety of the tract, vacating any preexisting lot lines, unless the plat says otherwise. Although the developer labeled the property at issue as "Not in Plat," that label spanned across the preexisting property lines and therefore cannot clearly indicate an intent to preserve them. Accordingly, the county and LUBA correctly interpreted the subdivision plat to operate on the entirety of the tract, including areas with the label "Not in Plat," and LUBA's order affirming the county's decision that petitioner has one remainder lot of record is not unlawful in substance.

Affirmed.

Christopher P. Koback argued the cause for petitioner. Also on the brief was Hathaway Larson LLP.

Michael H. McGean argued the cause for respondents Elkai Woods Homeowners Association, Elkai Woods Fractional Homeowners Association, and Seventh Mountain Golf Village Association, Inc. Also on the brief was Francis Hansen & Martin LLP.

No appearance for respondent Deschutes County.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Petitioner seeks judicial review of an order by the Land Use Board of Appeals (LUBA) that affirmed respondent Deschutes County's denial of petitioner's request for verification of 11 lots of record and its conclusion that the property described in that request was a single lot of record. Petitioner makes two assignments of error: first, that LUBA erred in concluding that a subdivision process that designated the subject property "Not in Plat" vacated the interior boundary lines of the subject property; second, that LUBA erred in concluding that the county plausibly interpreted its own code as to the meaning of "lot of record." We affirm.

We review LUBA's order to determine whether it is "unlawful in substance or procedure[.]" ORS 197.850(9)(a). A LUBA order is unlawful in substance "if it represent[s] a mistaken interpretation of the applicable law." *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001).

The property at issue is entirely within the Widgi Creek resort area and includes a golf course and associated facilities. Prior to 1984, the property was owned by the federal Bureau of Land Management (BLM). In 1984, BLM conveyed it to one of petitioner's predecessors-in-interest, Seventh Mountain Development Corporation ("the developer"). The property was conveyed as a 235-acre tract consisting of four parcels, Parcels A, B, C, and D.

In 1985, the developer prepared a survey to define the property's exterior boundaries. That survey showed the parcels (referred to as Parcels 1, 2, 3, and 4 on that survey) in the same configuration as the 1984 BLM survey. In 1990, the developer sought approval for a subdivision plat to create 107 residential lots—the Seventh Mountain Golf Village. The 1990 developer survey did not label or identify the preexisting parcels: it did include section lines that corresponded to the parcels as shown on the 1984 BLM survey, but it also included section lines that did not correspond to any internal property boundaries in that survey. The remaining unplatted areas, which generally surrounded the

107 platted residential areas[1] and were the planned location for the future golf course, were labeled "Not in Plat."

In 1994, the developer conveyed its interests in the golf course and the Seventh Mountain Golf Village in a single deed to Yamazoe International. That deed identified the golf course area (previously delineated as "Not in Plat") as "Parcel 2" and described it "using the metes and bounds description of Parcels A, B, C, and D as delineated in the 1984 BLM survey, and then excepting out all portions lying within the recorded subdivision plat for the Seventh Mountain Golf Village." Petitioner subsequently became the owner of the golf course described as "Parcel 2" in the 1994 deed.

In 2016, petitioner applied to the county to verify 10 separate units of land within the land previously described as "Parcel 2" as "lots of record" under the county code. Petitioner contended that the internal property line divisions from the 1984 BLM survey had survived the 1990 subdivision which, when combined with the 107 residential lots, resulted in the creation of 11 unplatted remainder parcels."[2]

A county hearings officer rejected petitioner's argument, and petitioner appealed to the board of county commissioners. The county held a *de novo* proceeding and then issued a final land use decision.[3] In that decision, the county affirmed the hearings officer's decision, concluding that the 1990 subdivision plat had the effect of vacating the internal property lines from the 1984 BLM survey.

---

[1] There was also one large unplatted area, which was completely surrounded by platted residential lots and roads and is now occupied by part of the golf course.

[2] Although petitioner initially sought the approval of 10 parcels, county staff determined that, if petitioner's theory were correct, the result would be the creation of 11 unplatted remainder parcels and modified petitioner's application accordingly.

[3] While awaiting the county's decision, petitioner initiated a mandamus proceeding because the decision-making process exceeded the time frame set out in ORS 215.429. The trial court dismissed petitioner's mandamus petition and we affirmed, concluding that "[petitioner's] application was not an application for approval of a proposed development of land. As a result, ORS 215.429 did not supply a basis for the trial court to grant petitioner the requested mandamus relief." *State ex rel Kine v. Deschutes County*, 307 Or App 290, 296, 477 P3d 417 (2020).

The county concluded that, because "the configuration of the 1990 [subdivision] plat chosen by the developer would not have been possible except as a subdivision of the entire property subject to the 1984 [BLM] survey" and "the landowner made no effort to differentiate or preserve [the] old lines as discrete remainder lots or parcels," the 1990 subdivision plat "had the effect of eliminating the separate lot lines" from the 1984 BLM survey.

In making that determination, the county applied ORS 92.017, which provides that "[a] lot or parcel lawfully created shall remain a discrete lot or parcel, unless the lot or parcel lines are vacated or the lot or parcel is further divided, as provided by law." ORS 92.017.[4] Relying on *Weyerhaeuser Real Estate Development Co. v. Polk County*, the county concluded that the 1990 subdivision plat vacated the previous internal boundaries, including those found on the BLM survey. 246 Or App 548, 558, 267 P3d 855 (2011) (recognizing that, under ORS 90.217, "a partition had the effect of vacating previous lot lines [inside the partition plat boundaries], at least where * * * the partition map does not indicate the continued existence of the lots that were partitioned"). Thus, the county concluded that the 1990 subdivision plat "created 107 residential lots and one single 'not in plat' remainder lot of record" under the county code.[5]

---

[4] We note that at the time of the 1990 subdivision plat, the statute was slightly broader in its description of what could alter a discrete lot or parcel. *See* ORS 92.017 (1989), *amended by* Or Laws 1993, ch 702, § 2 ("A lot or parcel lawfully created shall remain a discrete lot or parcel, unless the lot or parcel lines are *changed or* vacated or the lot or parcel is further divided, as provided by law." (Emphasis added.)). However, because there are no arguments before us about whether the property lines were changed, only vacated, we refer to the current statute.

[5] The county also interpreted the definition of "lot of record" in the county code and concluded that, under that definition, any remainder lot or parcel created by a partition or subdivision is, by default, a single "lot of record." Consequently, the county concluded that, even if petitioner's theory regarding the persistence of the 1984 BLM survey parcel lines were correct, the 1990 subdivision plat still left petitioner with a single lot of record by operation of the county code. LUBA affirmed the county's interpretation as "an alternative to the primary conclusion that the 1990 subdivision plat vacated the preexisting parcel lines," and petitioner assigns error to that affirmance on review. Because we affirm LUBA's conclusion that the 1990 subdivision plat vacated the preexisting parcel lines and therefore left petitioner with only one remainder lot of record regardless of whether the county code allows for more than one remainder lot of record, we do not reach petitioner's argument regarding the county's interpretation of its code.

Petitioner appealed to LUBA, arguing both that "the 1990 subdivision plat proposed the continued existence of preexisting parcel lines and that those preexisting property lines, in combination with the platted subdivision lots, roads, and common areas, created up to 11 remainder parcels." Petitioner argued that *Weyerhaeuser* is inapplicable because the 1990 subdivision plat expressly denoted areas of the subject property as "Not in Plat." In petitioner's view, the "Not in Plat" notation meant that those areas are outside the plat as a whole and therefore could not be affected by the 1990 subdivision.

LUBA disagreed, noting that the "1990 subdivision plat necessarily depicts (and operates upon)" the entire plat, including both the 107 lots and the remainder parcel labeled "Not in Plat" that became the Seventh Mountain golf course. Accordingly, LUBA concluded that *Weyerhaueser* controlled and the 1990 subdivision plat had the effect of vacating preexisting parcel lines, because the plat did not indicate the continued existence of those lines.

LUBA observed that Parcels A, B, C, and D were not labeled on the 1990 plat; those preexisting parcels were separated by dashed lines rather than solid property lines, and "in some places, the notation 'Not in Plat' is written indiscriminately across dashed section lines that, under petitioner's theory, represent preexisting parcel lines." Because the usage of the dashed lines and the "Not in Plat" notation did not clearly denote the developer's intention to retain preexisting parcel lines, LUBA affirmed the county's conclusions that the 1990 subdivision plat had the effect of vacating the preexisting parcel lines and that petitioner's parcel was one remainder lot of record.

Petitioner timely petitioned for judicial review of LUBA's order. On judicial review, petitioner contends that LUBA erred by "disregarding lawfully created property lines of parcels that were explicitly 'Not [in] Plat' and never subjected to any local process that can be used to vacate property lines under ORS 92.017." Further, petitioner argues that the county's conclusion, affirmed by LUBA, that the 1990 subdivision plat operated on the property designated

"Not in Plat" was legal error, because a plat cannot operate on property outside the plat.

We are not persuaded by petitioner's characterization of the effect of the "Not in Plat" denotation. As LUBA described in its order, the 1990 subdivision plat overlaid the entire 235-acre tract that was originally conveyed by BLM to the developer. Further, the exterior boundaries of the 1990 subdivision plat followed the exterior boundaries of the original Parcels A, B, C, and D, indicating that the full area of those parcels, including the areas labeled "Not in Plat," was within the boundaries of the subdivision plat.

Although petitioner is correct that ORS 92.017 protects lawfully created plots from consolidation unless those plots are vacated or divided, the plots that petitioner wants to preserve were, in fact, vacated. The statutory scheme as a whole, including the legislature's enactment of statutes providing that replatting acts to vacate preexisting lot lines, acknowledged "a process already in use by some local governments, whereby combining lots to redivide land into parcels would vacate prior lot lines." *Weyerhaeuser,* 246 Or App at 560-61. When, as here, a subdivision plat overlays an entire tract of land—a finding that petitioner does not contest— that plat operates on the entirety of the tract, vacating any preexisting lot lines, unless the plat says otherwise. *See id.* at 559 (preexisting lot lines were vacated when, "[a]lthough the partition apparently did not cut through the previous lot lines, nothing in the partition survey map indicates that any of the lots were intended to be preserved"). Although the developer labeled the site of the future golf course, which fell outside the 107 individual residential plats, "Not in Plat," that label spanned across the preexisting property lines and therefore cannot clearly indicate an intent to preserve them. Accordingly, the county and LUBA correctly interpreted the 1990 subdivision plat to operate on the entirety of the tract including areas with the label "Not in Plat."

The 1990 subdivision plat contemplated use and platting of the entire subject property and, given the plat's lack of clear indication to maintain the preexisting parcel lines, LUBA's order affirming the county's decision that

petitioner has one remainder lot of record is not "unlawful in substance."

Affirmed.