Argued and submitted May 11, affirmed July 7, 2022

## CENTRAL OREGON LANDWATCH,
*Petitioner,*

*v.*

## DESCHUTES COUNTY
and Cynthia Grossman,
*Respondents.*

### Land Use Board of Appeals
2021110, 2021111; A178232

514 P3d 1201

Petitioner Central Oregon LandWatch seeks judicial review of a final order of the Land Use Board of Appeals (LUBA), which affirmed decisions of Deschutes County approving two conditional-use permits for nonfarm dwellings on intervenor's 311-acre tract of farmland, identified by the county as a single tax lot in an exclusive farm use (EFU) zone. Petitioner contends that the conditional use permits for nonfarm dwellings were not properly authorized, because the disputed parcels were not in existence in 1993, as required by ORS 215.284(2)(c). *Held*: On review of LUBA's order to determine whether it is unlawful in substance or procedure, ORS 197.850(9)(a), the Court of Appeals held that LUBA correctly concluded that the two disputed parcels were created before January 1, 1993, by virtue of deeds created in 1913 and 1917, and correctly interpreted ORS 215.284(2)(c) to allow nonfarm dwellings on the parcels. Thus, LUBA's order affirming the county's determination that the two parcels are eligible for siting of nonfarm dwellings under ORS 215.284(2)(c) is not unlawful in substance or procedure.

Affirmed.

Carol MacBeth argued the cause and filed the brief for petitioner.

Lisa Andrach argued the cause for respondent Cynthia Grossman. Also on the brief was Fitch & Neary, PC.

No appearance for respondent Deschutes County.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Petitioner Central Oregon LandWatch seeks judicial review of a final order of the Land Use Board of Appeals (LUBA), which affirmed decisions of Deschutes County approving two conditional-use permits for nonfarm dwellings on intervenor's 311-acre tract of farmland, identified by the county as a single tax lot in an exclusive farm use (EFU) zone. We review LUBA's order to determine whether it is unlawful in substance or procedure, ORS 197.850(9)(a), that is, for whether "it represent[s] a mistaken interpretation of the applicable law." *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001). We conclude that LUBA's order is not unlawful in substance or procedure, and we therefore affirm.

The petition involves a dispute concerning whether the county, and LUBA, correctly determined that, within the 311-acre tract, which intervenor acquired in 2001 by a single deed providing a metes-and-bounds description, are two separate "parcels" eligible for development with nonfarm dwellings.

The county's approval of nonfarm dwellings was subject to ORS 215.284(2), which provides, in part:

"In counties not [within the Willamette Valley] a single-family residential dwelling not provided in conjunction with farm use may be established, subject to approval of the governing body or its designee, in any area zoned for exclusive farm use upon a finding that:

"* * * * *

"(c)   The dwelling will be sited on a lot or *parcel* created before January 1, 1993[.]"

(Emphasis added.)

ORS 215.010(1)(a), in turn, provides that, for purposes of ORS chapter 215, the term "parcel"

"[i]ncludes a unit of land created:

"* * * * *

"(C)   By deed or land sales contract, if there were no applicable planning, zoning or partitioning ordinances or regulations."

LUBA upheld the county's determination that the 311-acre tract includes two parcels eligible for development as nonfarm dwellings under ORS 215.284(2)(c), by virtue of deeds created in 1913 and 1917. We quote from LUBA's summary of the undisputed facts:

"The subject property is a 311-acre parcel of land in an EFU zone. Intervenor-respondent (intervenor) acquired the tract in 2001, via a single deed that described the land conveyed using a single metes and bounds description. In 2004, intervenor applied to the county for lot of record verification, requesting that the county verify that the tract includes up to 10 'lots of record,' as defined in the Deschutes County Code (DCC). Intervenor presented evidence that all 10 units of land that make up the tract were created in various lawful ways prior to the adoption of county partition regulations in 1977, including two units of land that were created by deed in 1913 and 1917. On September 13, 2004, the county issued the lot of record verification, verifying that nine of the units of land, including the two units of land created by deed in 1913 and 1917, qualify as 'lots of record,' as defined in the DCC 2021-110. *** The county's lot of record verification was not appealed.

"In 2008, intervenor applied for the county to approve property line adjustments to reconfigure the size and boundaries of the parcels within the tract that were verified as lots of record in 2004. The county approved the property line adjustments. Subsequently, in 2009, intervenor recorded a number of deeds to effect the approved property line adjustments, including deeds for the two subject parcels. The current size and configuration of the two subject parcels resulted from the 2009 deeds.

"In 2021, intervenor filed conditional use permit applications with the county, seeking approval of a dwelling not in conjunction with farm use (nonfarm dwelling) on each of the subject parcels. ORS 215.284(2)(c) provides, in relevant part, that the county may approve a nonfarm dwelling on a 'lot or parcel created before January 1, 1993.' ORS 215.284(2) and other pertinent statutory provisions regarding nonfarm dwellings are implemented in the DCC provisions governing the county's exclusive farm use zones, at DCC 18.16.050(G). DCC 18.16.050(G)(1)(a)(6) requires, in relevant part, that '[t]he nonfarm dwelling shall be located on a lot or parcel created prior to January 1, 1993.'

"County staff approved one of the conditional use permit applications, and the other was referred to the hearings officer after petitioner appealed the first approval. The hearings officer conducted a consolidated appeal proceeding, in which petitioner argued, among other things, that the subject parcels were created in 2009, when intervenor recorded the deeds effecting the 2008 property line adjustments. Petitioner also argued that the county cannot rely upon the 2004 lot of record verification to conclude that the subject parcels were created prior to January 1, 1993, as required by DCC 18.16.050(G)(1)(a)(6) and ORS 215.284 (2)(c). In decisions dated August 10, 2021, the hearings officer rejected petitioner's arguments and approved the conditional use permit applications. These appeals followed."

LUBA affirmed the county's decision determining the existence of the two parcels and approving the two nonfarm dwellings. LUBA took note that the county's 2004 "lot of record" determination had concluded that there are nine parcels within the 311-acre property that were created before January 1, 1993.[1] LUBA explained that a lot-of-record determination is a land use decision that must comply with state land use laws. LUBA further engaged in its own analysis and determined, like the county, that those lots of record are "parcels," under ORS 215.284(2)(c). LUBA referred to ORS 215.010(1)(a), defining "parcel" to "include a unit of land" created by deed "if there were no applicable planning, zoning or partitioning ordinances or regulations." LUBA explained that the deeds of 1913 and 1917, at a time when there was no zoning of the 311-acre property, created separate parcels within the larger acreage. LUBA rejected petitioner's contention that the fact that deeds created in 1977 and 2001 made no to reference to the 1913 and 1917 deeds eliminated the separate parcels created by those

---

[1]  A "lot of record" is defined in DCC 18.04.030:

"A.  A lot or parcel at least 5,000 square feet in area and at least 50 feet wide, which conformed to all zoning and subdivision or partition requirements, if any, in effect on the date the lot or parcel was created, and which was created by any of the following means:

"* * * * *

"(3)  By deed or contract, dated and signed by the parties to the transaction, containing a separate legal description of the lot or parcel, and recorded in Deschutes County if recording of the instrument was required on the date of the conveyance."

earlier deeds. LUBA affirmed the county's approval of inter-venor's applications for nonfarm dwellings on two of those lots of record, a 5.19-acre parcel as identified by the 1913 deed and a 5.34-acre parcel as identified by the 1917 deed.

On judicial review, in three assignments of error, petitioner contends that LUBA's order is unlawful in sub-stance. Petitioner contends that, in determining that the 311-acre tract contains two parcels eligible for nonfarm dwellings, LUBA (1) failed to independently determine the legislature's intent in enacting ORS 215.284(2)(c) through an analysis of its text, context, and legislative history, tak-ing into consideration the policy that exceptions to EFU zoning requirements be narrowly construed; (2) mistakenly relied only on the county's "lot of record" verification, which was based on criteria different from the determination of the existence of a parcel under ORS 215.284(2)(c) and ORS 215.010(1)(a); and (3) erred in treating as parcels existing on January 1, 1993, lots whose boundaries had been signifi-cantly reconfigured from their original boundaries through lot-line adjustments in 2009.

Intervenor responds that LUBA's order is not unlaw-ful in substance or procedure, because LUBA correctly con-strued ORS 215.284(2)(c) and correctly upheld the county's nonfarm-dwelling determination.

The parties' contentions present an issue of statu-tory construction to be addressed through the application of the principles set out in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), and *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). We determine the mean-ing of the statute most likely intended by the legislature by examining the text in context along with any legislative his-tory offered by the parties and, if necessary, relevant can-ons of construction. *Gaines*, 346 Or at 171-72. We conclude under that analysis that LUBA correctly construed ORS 215.284(2)(c) and ORS 215.010(1)(a) and that its order is not unlawful in substance or procedure.

We address first petitioner's second assignment of error, in which petitioner contends that LUBA's order is unlaw-ful in substance because LUBA erroneously relied on the county's previous lot-of-record determination and did not

engage in its own analysis of whether the properties qualify as "parcels" under ORS 215.284(2)(c). We reject the contention. Although LUBA's order cited and referred to the previous lot-of-record determination, it is clear that LUBA also independently determined that the properties qualified as "parcels" under ORS 215.284(2)(c).

In its first assignment, petitioner contends that, in violation of the legislative policy that farmland in EFU zones be used for farming and that exceptions to EFU zoning requirements be narrowly construed, LUBA has mistakenly interpreted ORS 215.284(2)(c) to permit nonfarm dwellings on intervenor's farmland. Petitioner concedes that ORS 215.284(2)(c) sets forth the requirements for nonfarm dwellings of farmland and provides that nonfarm dwellings may be sited on parcels in existence before January 1, 1993, the effective date of ORS 215.284(2)(c). Petitioner further concedes that ORS 215.010(1)(a) defines "parcel" for purposes of ORS 215.284(2) as including a unit of land created "by deed" at a time when no zoning laws were applicable, and that two such parcels were in fact created by deeds in 1913 and 1917. Petitioner contends, however, that the legislative history of ORS 215.284(2)(c) shows that the legislature intended that, if the availability of a nonfarm dwelling is to be determined based on the existence of a deed, the deed must establish a separate parcel as of 1993, when ORS 215.284(2)(c) was enacted, based on the county's "official records." Petitioner contends that the two parcels created in 1913 and 1917 did not exist in 1993, because a subsequent deed to the entire 311-acre tract in 1977 made no mention of them.

We agree with petitioner that if the availability of a nonfarm dwelling is to be determined based on the existence of a deed, the deed must establish a separate parcel as of 1993, when ORS 215.284(2)(c) was enacted. But we are hard-pressed to understand the logic of petitioner's further argument that the parcels created by the 1913 and 1917 deeds have been eliminated. ORS 92.017(1) provides that "[a] lot or parcel lawfully created shall remain a discrete lot or parcel, unless the lot or parcel lines are vacated or the lot or parcel is further divided, as provided by law." There is no contention that the parcels created by deeds in 1913 and 1917 were not lawfully created or that they have

been vacated. The fact that the deeds of 1977 and 2001 did not reference them did not mean that the parcels themselves have been vacated. *Cf. Kine v. Deschutes County*, 313 Or App 370, 496 P3d 1136, *rev den*, 369 Or 69 (2021) (In view of ORS 92.017, requiring that replatting acts to vacate preexisting lot lines, when a subdivision plat overlays an entire tract of land, "that plat operates on the entirety of the tract, vacating any preexisting lot lines, unless the plat says otherwise."). The plain and unambiguous texts of ORS 215.284(2)(c) and ORS 215.010(1)(a) require the conclusion that parcels created by deeds in 1913 and 1917 existed on January 1, 1993, and were eligible for the siting of nonfarm dwellings.[2]

In its third assignment, petitioner contends that the parcels created by deeds in 1913 and 1917 no longer qualified as "parcels" for purposes of ORS 215.284(2)(c)—as narrowly construed—after the 2009 by lot-line adjustments. Once again, we reject the contention. ORS 308.149(4) defines a lot line adjustment, for purposes of the Oregon tax code, as "any addition to the square footage of the land for a real property tax account and a corresponding subtraction of square footage of the land from a contiguous real property tax account." A lot-line adjustment can significantly change the dimensions and size of a lot, as occurred here. But a lot-line adjustment that does not result in an additional lot does not create a new parcel. *See* ORS 92.010(12) ("'Property line adjustment' means a relocation or elimination of all or a portion of the common property line between abutting properties that does not create an additional lot or parcel."). ORS 215.284(2)(c) and ORS 215.010(1)(a) together permit the siting of nonfarm dwellings on parcels in existence on January 1, 1993, and neither statute includes an exception for parcels that have been modified by lot-line adjustments. We conclude that the parcels created by deed in 1913 and 1917 remained separate parcels for purposes of ORS 215.284(2)(c), despite the lot-line adjustments.

For all of the above reasons, we reject petitioner's assignments of error and conclude that LUBA's order

---

[2] We have examined the legislative history cited by petitioner and are not persuaded that it requires a construction different from our construction of the statutes' plain and unambiguous text.

affirming the county's determination that two parcels in the 311-acre tract are eligible for siting of nonfarm dwellings is not unlawful in substance or procedure.

Affirmed.