742                    March 12, 2025                    No. 212

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Mike LECKIE,
*Petitioner,*

*v.*

LANE COUNTY
and Landwatch Lane County,
*Respondents.*

Land Use Board of Appeals
2024024;
A185824

Argued and submitted December 20, 2024.

Zach P. Mittge argued the cause and filed the brief for petitioner.

Sean Malone argued the cause and filed the brief for respondents.

Before Ortega, Presiding Judge, Hellman, Judge, and Mooney, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Petitioner seeks judicial review of an order of the Land Use Board of Appeals (LUBA). In that order, LUBA affirmed Lane County's denial of petitioner's request for legal lot verification. Petitioner raises two assignments of error, presented in the alternative. First, petitioner asserts that LUBA's decision was unlawful in substance because the parcel established in 1912 as lot 27, which shares acreage with part of petitioner's current property, remains a lawfully established unit of land. Second, and alternatively, petitioner asserts that, even if the subject property had ceased to be a lawfully established unit of land, LUBA erred in finding that a subsequent partition in 1993 made by petitioner's neighbor did not functionally re-create historical Lot 27. We affirm.

We review LUBA's order to determine whether it is unlawful in substance or procedure. ORS 197.850(9); *Central Oregon LandWatch v. Deschutes County*, 315 Or App 673, 676, 501 P3d 1121 (2021) (citing ORS 197.850(9)). A LUBA order is unlawful in substance "if it represents a mistaken interpretation of the applicable law." *Kine v. Deschutes County*, 313 Or App 370, 372, 496 P3d 1136 (2021) (internal quotation marks omitted).

## FACTS

To understand the arguments in this case, it is necessary to review the history behind the creation of petitioner's current property.

In 1912, petitioner's current property was located on an acre of land originally platted as Porter Acres Subdivision.[1] That plat created two 40-acre lots of land: Lot 27 (1912 Lot 27) and Lot 28 (1912 Lot 28).[2]

---

[1] "'Partition plat' includes a final map and other writing containing all the descriptions, locations, specifications, provisions and information concerning a partition." ORS 92.010(8).

[2] "'Lot' means a single unit of land that is created by a subdivision of land." ORS 92.010(4). A "parcel" is a "single unit of land that is created by a partition of land." ORS 92.010(6).

In 1977, the owner of all of 1912 Lot 27 and part of 1912 Lot 28 partitioned[3] the lots into three new parcels: 1977 Parcel 1, made up of 15 acres; Parcel 2, which was 67 acres; and an unnumbered third parcel of an indeterminate acreage based on this record. The 1977 partition is depicted below:



In 1981, another partition occurred. The owner of 1977 Parcel 2 applied for a further partition that would divide the 67 acres into two new parcels: 1981 Parcel 1, which would be a 62.6-acre parcel including the entirety of 1912 Lot 27 and a portion of 1912 Lot 28, and 1981 Parcel 2,

---

[3]  "'Partition' means either an act of partitioning land or an area or tract of land partitioned. ORS 92.010(7)

"'Partitioning land' means dividing land to create not more than three parcels of land within a calendar year, but does not include:

"* * * * *

"(b)  Adjusting a property line as property line adjustment is defined in this section;

"(c)  Dividing land as a result of the recording of a subdivision or condominium plat[.] * * *"

ORS 92.010(9).

a five-acre parcel located entirely within the bounds of what was 1912 Lot 28. The 1981 partition map is show below:



In 1984, Lane County applied F-2 zoning to 1981 Parcel 1, requiring a minimum of 80 acres of land in order for new dwellings to be built.

In 1989, Loomis, the owner of 1981 Parcel 1, executed two deeds involving that plot of land. The first deed created 1989 Parcel 1, a 40-acre portion of 1981 Parcel 1, which was deeded to petitioner. The second deed created 1989 Parcel 2, a 24.3-acre portion of 1981 Parcel 1, which was deeded to Loomis and Loomis, wife and husband. Importantly, the 1989 Parcel 1 that was partitioned to petitioner also included part of 1912 Lot 27.

Finally, in 1993, the owners of 1989 Parcel 2 applied to further partition their 24.3 acres to make two new parcels, which the county approved.

## PROCEDURAL HISTORY

Petitioner subsequently applied to Lane County for legal lot verification under Lane Code (LC) 13.140, seeking to have his 40-acres verified as a "lawfully established unit of land."[4] In 2024, the Lane County planning director denied petitioner's application for a legal lot verification based on the conclusion that the 1977 partition vacated the lot lines of 1912 Lot 27 and a portion of 1912 Lot 28. In addition, the planning director concluded that the 1981 partition "further reconfigured 1977 Parcel 2 into 1981 Parcel 1 and 1981 Parcel 2." According to the planning director, that meant that the 40-acre portion deeded to petitioner in 1989 "created a unit of land that was not in conformance with applicable partition regulations at the time."

Petitioner appealed the planning director's denial to the Lane County hearings official. The hearings official ultimately affirmed the planning director's denial, relying largely on our decision in *Weyerhaeuser Real Estate Develop. v. Polk County*, 246 Or App 548, 550-58, 267 P3d855 (2011) (*WREDCO*). The hearing official reasoned that, when applied to the 1977 partition, *WREDCO*'s holding supported a conclusion that petitioner's property was "no longer a discrete lawfully established unit of land" because the 1977 partition had vacated the boundaries of original lots 1912 Lot 27 and 1912 Lot 28.

Petitioner then appealed the hearing official's decision to LUBA. LUBA affirmed the county's decision on three grounds. LUBA first concluded that the hearings officer properly construed LC 13.140(3) and LC 13.030(3) when they concluded that petitioner's property created in 1989 by deed

---

[4] ORS 92.010(3) provides:

"(a) 'Lawfully established unit of land' means:

"(A) A lot or parcel created pursuant to ORS 92.010 to 92.192; or

"(B) Another unit of land created:

"(i) In compliance with all applicable planning, zoning and subdivision or partition ordinances and regulations; or

"(ii) By deed or land sales contract, if there were no applicable planning, zoning or subdivision or partition ordinances or        regulations.

"(b)  Lawfully established unit of land' does not mean a unit of land created solely to establish a separate tax account."

was not created in compliance with the applicable land division regulations and therefore is not a lawfully established unit of land. LUBA further affirmed the hearing officer's conclusion that "the boundaries of 1912 Lot 27 and 1912 Lot 28 were eliminated by the approved, final 1977 Partition, which partition combined 1912 Lot 27 and 1912 Lot 28" to create two new parcels. In rejecting petitioner's contention that *WREDCO* was not on point because it was a "property line case," LUBA agreed with the hearings officer that there was not a "relevant distinction" between property line adjustments and legal lot verifications. Finally, LUBA concluded that the 1993 partition did not "re-create" petitioner's property as a lawfully established unit of land, because the partition "sought and received approval to partition only the 24.3-acre portion of 1981 Parcel 1," which did not include any part of petitioner's property. This petition for judicial review followed.

## ANALYSIS

On judicial review, petitioner first assigns error to LUBA's construction of "lawfully established unit of land" when it concluded that the 1977 Partition Plat vacated the original 1912 lot lines. Petitioner argues that the text, context, and legislative history of ORS 92.010(3) support a conclusion that the status of a "lawfully established unit of land" is determined "at the time of the platting of the lot." Petitioner asserts that LUBA "inserts requirements" into the definition of "lawfully established unit of land" that are not contained in the relevant provision. We disagree with petitioner's arguments.

We first consider the legal effect of the 1977 and 1981 partitions on the subject property. The 1977 Partition Plat clearly designates the creation of three nested parcels of land from the two original 1912 lots. Nowhere on that partition plat does it indicate where 1912 Lots 27 or 28 were in reference to the creation of these new parcels. It is well established that "[p]artition has the effect of vacating previous lot lines, at least where, as here, *the partition map does not indicate the continued existence of the lots that were partitioned*." *WREDCO*, 246 Or App at 558 (emphasis added); *see also Kine*, 313 Or App at 376 ("When, as here, a subdivision

plat overlays an entire tract of land—a finding that petitioner does not contest—that plat operates on the entirety of the tract, vacating any preexisting lot lines, unless the plat says otherwise."). The 1977 Partition thus vacated the boundaries of the original lots. *See WREDCO*, 246 Or App at 558 (similarly holding that, under the applicable statutes of the time, "a partition had the effect of vacating previous lot lines").

Additionally, *WREDCO* explicitly considered the relationship between vacation of lots, the effect of subsequent plats on prior lot lines, and the legislature's intent as to those processes and concluded that that "the legislature did not intend to require counties to go through a separate, additional process to vacate lots when approving a partition of those lots into new parcels," nor did it intend "the previous lot lines to survive such a process, creating a spider web of overlapping lots and parcels." *Id.* at 558-59. In the same vein, LC 13.100(2) states that, "unless a contrary intent is clearly depicted or stated in a lawful manner, all underlying lawfully established units of land are vacated or eliminated once the [final] plat is recorded."

The 1981 partition map does indicate the two 1912 lots, but they are in dashed lettering, indicating a lack of intent to continue those parcels' existence. *See WREDCO*, 267 Or App at 552 (where, as here, only the solid lines showed the metes and bounds of the new parcels, while the dashed lines did not).

In sum, based on state and county law as well as relevant case law, neither the 1977 nor the 1981 partitions indicated the continued existence of 1912 Lots 27 and 28. Thus, LUBA correctly concluded that the 1977 partition plat vacated the original 1912 lot lines. Because those 1912 lot lines were not in effect in 1989, petitioner's property was not created in compliance with the applicable statutes and rules. ORS 92.010; LC 13.140(3); LC 13.030(3). LUBA's decision adheres to controlling precedent and is not unlawful in substance.

We turn to petitioner's second, alternative, assignment of error. He contends that, even if the property lines

were vacated in 1977, the 1993 partition "re-created" 1912 Lot 27 by re-establishing the lot's western property boundary. As noted, the 1993 partition was initiated not by petitioner but by the owners of 1989 Parcel 2, to further separate their 24.3 acres to make two new parcels. Petitioner claims that that action, which was not initiated or conducted by him nor included any part of his current 40-acre property deeded to him in 1989, cured any prior vacation of property lines.

Petitioner cites to no basis in law to support the proposition that approval of a partition to an adjoining property retroactively cures prior vacation of property lines. Indeed, petitioner's alternative argument depends on a conclusion that the 1977 partition plat re-instated 1912 Lot 27. But as explained above, that argument is contrary to the controlling case law, and petitioner has not otherwise demonstrated error in LUBA's conclusion on that point.

Affirmed.