No. 1133     December 30, 2025     127

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF
THE STATE OF OREGON

Mark HUTTO
and Andrea Hutto,
*Petitioners,*

*v.*

Jackson County,
*Respondent.*

Land Use Board of Appeals
2024088;
A188270

Argued and submitted September 30, 2025.

Mark Hutto argued the cause and filed the brief *pro se.* Also on the brief was Andrea Hutto.

Peter Philbrick argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Petitioners seek judicial review of a final opinion and order of the Land Use Board of Appeals (LUBA), which affirmed Jackson County's decision to approve petitioners' application for a temporary forest labor camp (TFLC) permit, with certain conditions. Specifically, the permit included an expiration date of December 31, 2024, and required petitioners to comply with certain wildfire mitigation standards. For the following reasons, we affirm.

We take the following facts from LUBA's opinion.

"Petitioners own a 40-acre parcel zoned Woodland Resource (WR), which is a county zone applied to land acknowledged as Forest Land under Statewide Planning Goal 4 (Forest Lands). The property is also located within an area mapped for wildfire hazard. The property is developed with 9-10 structures of various kinds, including several storage sheds. In December 2023, the county received a complaint about the use of the property and its structures, and opened a code enforcement investigation. As part of that investigation, county staff discussed with petitioners the possibility of applying for a county approval of a Temporary Forest Labor Camp, which would allow the structures on the property to be used for temporary living facilities for workers employed in logging petitioners' property. * * *

"On August 8, 2024, petitioners followed up on the staff suggestion and filed an application for a TFLC. * * * In relevant part, petitioners submitted a 'Notification of Operations Permit' (NOAP) to operate logging machinery issued by the Oregon Department of Forestry, and an associated screenshot indicating that petitioners were conducting a salvage logging operation beginning August 8, 2024, and ending December 31, 2024. Petitioners' submittal states that '[a]ll structures will be removed upon project completion, adhering to OAR 660-006-0025(2)(b).'[2]

[2] OAR 660-006-0025(2)(b) refers to a category of temporary uses that counties 'shall' allow outright on forest lands: temporary on-site structures that are auxiliary to and used during the term of a particular forest operation. As discussed below, a Temporary Forest Labor Camp or TFLC under OAR 660-006-0025(3) is a different category

of uses allowed outright on forest lands that counties 'may' choose to allow on forest lands.

"On August 27, 2024, the county advised petitioners that the application was complete. On the same date, the county issued a staff decision summarily denying the application \*\*\*. \*\*\* That initial denial was appealed to LUBA[.] \*\*\* The parties stipulated to a voluntary remand of the denial decision to reconsider the land use application for a Temporary Forest Labor Camp. \*\*\*

"On remand, county staff asked petitioner Mark Hutto by email if he wanted to submit any additional information in support of the application. Petitioner did not submit any additional information, but requested the right to be present at the county review meeting. The county advised petitioner that the application was being processed pursuant to the county's 'Type I' procedure, which provides for a staff decision based on review of the file, without any meeting or hearing.

"On November 21, 2024, county staff issued the decision challenged in this appeal, approving petitioners' application for a Temporary Forest Labor Camp, with conditions. The decision provides that the authorization to operate the camp expires on December 31, 2024, based on the NOAP petitioners submitted indicating that their logging operation terminated on December 31, 2024. The decision also requires firebreaks and other measures to protect against wildfire hazards."

LUBA affirmed the county's decision, and petitioners seek judicial review.

We review LUBA's decision to determine whether it is "unlawful in substance or procedure." ORS 197.850(9)(a). A decision is unlawful in substance "if it represents a mistaken interpretation of the applicable law." *Kine v. Deschutes County*, 313 Or App 370, 372, 496 P3d 1136, *rev den*, 369 Or 69 (2021) (internal quotation marks and brackets omitted).

*TFLC Permit Decision*: In their first assignment of error, petitioners claim that LUBA's decision is unlawful in substance because it upheld the county's permit decision, even though, in their view, the county exercised discretion in what should have been a purely ministerial process, in violation of ORS 197.015(10)(b)(A). As background, under OAR

660-006-025(3)(l), a TFLC is a use that may be allowed out-right on forest lands, if a county so chooses. Jackson County chose to allow TFLCs and processes such permit applications as a "Type 1" use, which is one that is

> "authorized by right, requiring only non-discretionary staff review to demonstrate compliance with the standards of this Ordinance. A Zoning Information Sheet may be issued to document findings or to track progress toward compliance. Type 1 authorizations are limited to situations that do not require interpretation or the exercise of policy or legal judgment. Type 1 authorizations are not land use decisions as defined by ORS 215.402."

Land Development Ordinance of Jackson County, Oregon (LDO) 3.1.2. In contrast, a "Type 2" use is "subject to administrative review" because the "decisions are discretionary and therefore require a notice of decision and opportunity for hearing." LDO 3.1.3. The county processed petitioners' permit application as a Type 1 use; however, petitioners allege that certain actions by the county demonstrate that it applied discretion in considering their permit application, which should have entitled them to the increased process afforded to an application for a Type 2 use.

Petitioners raise four arguments in support of that argument. First, petitioners claim that the permit expiration date was arbitrary and, because the county did not provide "clear, upfront criteria" for obtaining a different expiration date, it necessarily exercised discretion when it set the expiration date. Petitioners believe that the expiration date that the county selected was too early, given the nature of their logging operation, and wanted an explanation from the county about the kind of evidence they needed to submit to obtain a later expiration date.

Under LDO Table 4.3-1, a TFLC is a Type 1 use subject only to Chapter 13 definitions. A TFLC is defined in LDO 13.3(108) as follows:

> "An area of land that provides temporary living facilities for workers employed for forest management, forestry operations, or fire suppression purposes. Portable or pre-existing sanitation, bathing and cooking facilities may be provided in conjunction with temporary living facilities, which may

include tents, yurts, recreational vehicles or other types of shelter suitable and intended for use in a temporary or seasonal manner. *Forest labor camps may be used throughout the term of an operation or activity (e.g., forest fire) and must cease once the operation or activity is concluded.*"

(Emphasis added.) Under that provision of the LDO, the expiration of a TFLC is linked to the end of the forest "operation or activity." Here, as LUBA found, the county set the permit expiration date based on evidence that petitioners submitted in their application as to the duration of their logging operations. Thus, the county did not exercise discretion in imposing the expiration date; rather, it imposed the expiration date based on the only evidence in the record about when petitioners' logging operation would end.

Additionally, the fact that the county does not maintain a list of the types of evidence that can establish a permit expiration date does not mean that the county exercised discretion when it processed the permit based on petitioners' own representation of the end date of their operations. Petitioners cite no legal authority for the proposition that a county must define, in detail, the types of evidence that applicants can use to establish the conclusion date of a forest operation or activity. Indeed, a TFLC may involve a wide range of activities such as "forest management, forestry operations, or fire suppression purposes," and an exclusive list would run a serious risk of limiting an applicant's ability to make the required showing under LDO 13.3(108). Most importantly, however, in analyzing whether the county properly processed the application as a Type 1 ministerial permit, we focus on what the county did with the evidence provided to it. Here, the county relied on the only evidence in the record as to when petitioners' forest "activity or operation" would end. The county did not exercise any discretion in that decision, and LUBA did not err when it affirmed the county's decision on that basis.

Second, petitioners argue that the county's request for additional documentation following the stipulated remand "mirrors Type 2 discretionary review" without the opportunity for a hearing or another "mechanism to amend conditions" required in a Type 2 process. However,

an inquiry about whether an applicant has additional information to submit after a stipulated remand is separate from the processing of the permit application and does not involve the exercise of discretion in a decision. LUBA did not err when it affirmed the county's decision on that basis.

Third, petitioners argue that the county's use of the term "tentative" to describe the decision implied appeal and review rights that were not available under a Type 1 review. Petitioners allege that the county's description of the decision misled them and violated their due process rights. Having reviewed the record, we conclude that petitioners did not demonstrate that the misstatement prejudiced any of their substantial rights in this proceeding. LUBA did not err when it affirmed the county's decision on that basis.

Fourth, petitioners allege that county staff "conducted unauthorized property entries and issued erroneous compliance statements" which injected a level of subjectivity and bias that "undermined the objective Type 1 process." As LUBA correctly concluded, those allegations refer to a separate proceeding that preceded this appeal and do not bear on the question of whether the county impermissibly exercised discretion in approving petitioners' TFLC permit. LUBA did not err when it affirmed the county's decision on that basis.

*Wildfire Mitigation Requirements*: In their second assignment of error, petitioners argue that the county included wildfire mitigation requirements in the TFLC without proper notice and in violation of the "goalpost rule" in ORS 215.427(3), which requires counties to process applications based on the "standards and criteria that were applicable at the time the application was first submitted."

The wildfire mitigation standards in LDO 8.7 are mandatory for "all new and existing structures not exempted through [LDO] 8.7.2 located in areas subject to wildfire hazard as identified on the 'Hazardous Wildfire Area Map.'" The county determined, and petitioners do not dispute, that their property and the structures upon it are located in such an area. As a result, the county had no discretion to exempt

petitioners' permit from those requirements.[1] The wildfire mitigation standards have been part of Jackson County's land use code since 2011. Because the county applied "standards and criteria" that were in effect at the time petitioners' application was submitted, the county did not violate ORS 215.427(3).

*Motions to Supplement the Record*: In their third assignment of error, petitioners argue that LUBA abused its discretion under OAR 661-010-0045(1) when it denied their motions to supplement the record. The evidence that petitioners wanted to introduce included documents that allegedly demonstrated misconduct and misstatements by county code enforcement staff, and one petitioner's affidavit recounting conversations with Oregon Department of Forestry employees about the county's regulation of TFLCs. LUBA determined that the evidence related to the earlier proceedings that were not currently under consideration and "cannot affect the outcome of this review proceeding." LUBA also determined that there was no basis in its rules to admit the affidavit as evidence and that petitioners had not "explain[ed] how the affidavit is concerned with any of the grounds for taking evidence outside the record listed in OAR 661-010-0045(1)." Having reviewed the briefs, record, and LUBA's opinion, we conclude that LUBA did not abuse its discretion when it denied petitioners' motions to supplement the record.

Affirmed.

---

[1] We observe that LUBA asserted jurisdiction based on its determination that the county exercised discretion in the application of the wildfire safety requirements in petitioners' permit. Having reviewed the applicable LDO provisions and the permit itself, we question whether LUBA correctly assessed the jurisdictional question in this case. However, because neither party has challenged LUBA's jurisdictional decision, we do not address it further. And we do not find the possible questions about jurisdiction to indicate that LUBA's decision was unlawful in substance or that any procedural irregularities that may exist prejudiced petitioners' substantial rights.