Argued and submitted September 2, affirmed on petition and cross-petition
November 17, 2021

CENTRAL OREGON LANDWATCH,
*Petitioner*
*Cross-Respondent,*

*v.*

DESCHUTES COUNTY,
*Respondent*
*Cross-Respondent,*
*and*

Anthony J. ACETI,
*Respondent*
*Cross-Petitioner.*

Land Use Board of Appeals
2021028; A176412

501 P3d 1121

Petitioner-cross-respondent Central Oregon Landwatch (LandWatch) seeks judicial review of an order by the Land Use Board of Appeals (LUBA) regarding respondent-cross-respondent Deschutes County's rezoning of land owned by respondent-cross-petitioner Aceti from Agricultural/Exclusive Farm Use to Rural Industrial (RI). LUBA largely affirmed the county's decision but remanded for the county to make additional findings related to Statewide Planning Goal 14. LandWatch assigns error to LUBA's interpretation of the Deschutes County Comprehensive Plan and to its conclusion that the rezoning is not barred by Statewide Planning Goals 6 and 11. Aceti assigns error to LUBA's remand of the Goal 14 findings. *Held*: Neither LUBA's interpretation of the County Plan, its determination that the rezoning complies with Goals 6 and 11, nor its remand of the county's Goal 14 findings was in error.

Affirmed on petition and cross-petition.

Carol E. Macbeth argued the cause and filed the briefs for petitioner-cross-respondent.

Bill Kloos argued the cause for respondent-cross-petitioner. Also on the briefs was Law Office of Bill Kloos, PC.

No appearance for respondent-cross-respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed on petition and cross-petition.

**KAMINS, J.**

Petitioner-cross-respondent Central Oregon Landwatch (LandWatch) seeks judicial review of an order by the Land Use Board of Appeals (LUBA) regarding the zoning of land owned by respondent-cross-petitioner Aceti. Contending that the land was not suitable for agricultural uses, Aceti sought to have it rezoned from Agricultural/Exclusive Farm Use to Rural Industrial (RI). LandWatch intervened, citing environmental concerns. Respondent-cross-respondent Deschutes County approved Aceti's application to rezone the property, and LandWatch appealed to the Land Use Board of Appeals. LUBA largely affirmed the county's decision but remanded one aspect for the county to make additional findings. LandWatch sought judicial review, and Aceti cross-petitioned to challenge the partial remand. We conclude that neither party has demonstrated that LUBA erred and affirm on the petition and cross-petition.

The Deschutes County Comprehensive Plan (County Plan) provides a legal framework for the county's land use decisions and the Deschutes County Code (DCC or County Code) imposes regulations consistent with the County Plan. All land use decisions must comply with both the County Plan and the County Code as well as the Statewide Planning Goals. *See* ORS 197.175. LandWatch assigns three errors to LUBA's order: one based on the interpretation of the County Plan and two based on issues related to Statewide Planning Goals 6 and 11. Aceti cross-assigns error to LUBA's remand of the county's Goal 14 findings.

The subject property is comprised of 21.54 acres and is located about three miles north of the City of Bend, adjacent to Highway 97. The property is currently designated as Agricultural in the County Plan and zoned as Exclusive Farm Use.

The LUBA order under review is the fourth one regarding this property. In 2016, the county approved Aceti's application to change the property's plan designation and zone to RI. LandWatch appealed that decision to LUBA, and LUBA remanded due to inadequate findings to justify taking an exception to Goal 14. *Central Oregon LandWatch v. Deschutes County*, 74 Or LUBA 156 (2016) (*Aceti I*). The

county again approved the rezoning, but LUBA again reversed, concluding that the RI zone was unavailable to newly designated areas under the provisions of the County Plan. *Central Oregon LandWatch v. Deschutes County*, 75 Or LUBA 441 (*Aceti II*), *aff'd*, 288 Or App 378, 405 P3d 197 (2017).

In response, the county amended the County Plan to allow RI zoning outside of the existing exception areas. LandWatch appealed the amendment as inconsistent with Goal 14, but LUBA affirmed. *Central Oregon LandWatch v. Deschutes County*, 79 Or LUBA 253 (*Aceti III*), *aff'd*, 298 Or App 375, 449 P3d 534 (2019). In the decision under review, the county again approved Aceti's application to rezone the property to RI, and LandWatch again appealed to LUBA. LUBA affirmed much of the county's decision but remanded because it found that the county's Goal 14 findings were inadequate. This appeal followed.

We review LUBA's order to determine whether it is unlawful in substance or procedure or whether it is not supported by substantial evidence. ORS 197.850(9). "A LUBA order is unlawful in substance if it represents a mistaken interpretation of the applicable law." *Kine v. Deschutes County*, 313 Or App 370, 370-71, 496 P3d 1136 (2021) (internal quotation marks omitted). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

LandWatch first assigns error to LUBA's determination that the County Plan permits rezoning the subject property to RI. LandWatch points out that section 1.3 of the County Plan, which introduces the overall planning framework, describes the role of the RI designation as "to define *existing* areas of isolated rural industrial development" (emphasis added), meaning that the county could not create *new* RI zones. Aceti, on the other hand, points to section 3.4, which states, "The county may apply the Rural Industrial plan designation to specific property within existing Rural Industrial exception areas, *or to any other specific property* that satisfies the requirements for a comprehensive plan designation change." (Emphasis added.) Aceti argues that

the emphasized language indicates that the county may expand the RI designation to new areas.

Where, as here, there is not a county interpretation to which we must defer, we construe local ordinances, including comprehensive plans, using the familiar framework set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). *City of Eugene v. Comcast of Oregon II, Inc.*, 359 Or 528, 540, 375 P3d 446 (2016); *Maxwell v. Lane County*, 178 Or App 210, 228-29, 35 P3d 1128 (2001), *adh'd to as modified on recons*, 179 Or App 409, 40 P3d 532 (2002) (holding that the county's decision was not entitled to deference because the order did not interpret the relevant term). We attempt to determine the meaning most likely intended by the enacting body, in this case the Deschutes County Board of County Commissioners (Board).

When the County Plan was first adopted, LUBA concluded that it expressly limited the RI designation to three specific areas that already had industrial uses. *See Aceti II*, 75 Or LUBA at 450. In response to that determination in *Aceti II*, the Board amended the County Plan for the purpose of authorizing the creation of new RI zones, and LUBA affirmed those amendments. *Aceti III*, 79 Or LUBA 253. That history indicates a clear intent on the Board's part to allow for the expansion of the RI zone to additional properties.

Although perhaps inartfully drafted, section 1.3 does not preclude that reading simply by referring to "existing areas." Section 1.3 provides a general overview of all of the different designations, while section 3.4 provides the particular policies that apply to the RI designation. Section 1.3 also refers to section 3.4 for the details of the RI zone. Because it expressly refers to and acknowledges the role of section 3.4 as providing information specific to the RI designation, it would be illogical to conclude that section 1.3 was intended to invalidate 3.4. And, to the extent that section 1.3 could be said to conflict with section 3.4, section 3.4 would prevail because it is more specific. *See* ORS 174.020(2) ("When a general and particular provision are inconsistent,

the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent."). LUBA's determination that the County Plan allowed the rezoning was not in error.

In its second assignment of error, LandWatch contends that the rezoning violates Statewide Planning Goal 6. Goal 6 is "[t]o maintain and improve the quality of the air, water and land resources of the state." OAR 660-015-0000(6). It provides, in relevant part, "[a]ll waste and process discharges from future development, when combined with such discharges from existing developments shall not threaten to violate, or violate applicable state or federal environmental quality statutes, rules and standards." *Id.* LUBA determined that designating the subject property as RI complies with Goal 6 because Goal 6 requires only that the county ensure that there is a "reasonable expectation" that the uses permitted in the RI zone will not violate state and federal environmental quality standards. *Friends of the Applegate v. Josephine County*, 44 Or LUBA 786, 802 (2003). Here, that reasonable expectation is created by DCC 18.100.030(J), which requires that proposed uses be reviewed by the applicable state or federal authority before the county approves them. LandWatch contends that that reasoning is impermissibly based on speculation about how a different entity will act in the future. In other words, LandWatch argues that relying on DCC 18.100.030(J) places the onus on state and federal permitting agencies, relieving the county of the responsibility to fully assess the environmental consequences of the rezoning.

That argument, however, misconstrues LUBA's reasoning. In context, the language at issue addresses LandWatch's contention that the county could not adequately assess Goal 6 compliance without a development proposal indicating the proposed use. LUBA concluded that the county could fulfill the requirements of Goal 6 by evaluating the RI zone itself, as embodied in the County Code, without having a specific development proposal in front of it. We do not read LUBA's order to hold that a local government can always show Goal 6 compliance by pointing to environmental regulations, only that in this case, the RI uses in the County Code are adequately limited. Moreover, the existence of

those limitations was not the only reason LUBA determined that the county's Goal 6 analysis was adequate; LUBA also determined that the evidence in the record supported the county's decision. In response to LandWatch's specific Goal 6 arguments related to the property's lack of water and sewer service, LUBA evaluated and accepted the county's findings that the property had access to water service, and that waste discharges could be safely treated on-site. Those findings were supported by substantial evidence in the record. LUBA did not err in determining that the county's decision complied with the requirements of Goal 6.

In its final assignment of error, LandWatch argues that the combination of Goal 6 and Goal 11 bars the rezoning. Goal 11 is "[t]o plan and develop a timely, orderly and efficient arrangement of public facilities and services to serve as a framework for urban and rural development." OAR 660-015-0000(11). As LUBA explained, it "prohibits extension of urban services such as sewer and water to rural lands outside UGBs." LandWatch contends that RI uses cannot comply with Goal 6 without public sewer or water service, but Goal 11 prohibits the extension of those services to the property. As noted above, LUBA properly found that the property already had access to water service, and that waste could be treated by a private, on-site sewage disposal system. LandWatch's third assignment of error provides no basis for reversal.

Aceti cross-assigns error to LUBA's remand of the county's finding that the rezoning does not violate Goal 14, which generally prohibits urban uses of rural land.[1] *See 1000 Friends of Oregon v. LCDC (Curry Co.)*, 301 Or 447, 498-511, 724 P2d 268 (1986). In order to determine whether a given use is "urban" or "rural," LUBA applies the multifactor test it established in *Shaffer v. Jackson County*, 17 Or LUBA 922 (1989). Those factors are

"whether the industrial use (1) employs a small number of workers, (2) is significantly dependent on a site-specific

---

[1] Goal 14 is "[t]o provide for an orderly and efficient transition from rural to urban land use, to accommodate urban population and urban employment inside [UGBs], to ensure efficient use of land, and to provide for livable communities." OAR 660-015-0000(14).

resource and there is a practical necessity to site the use near the resource, (3) is a type of use typically located in rural areas, and (4) does not require public facilities or services."

*Columbia Riverkeeper v. Columbia County*, 70 Or LUBA 171, 211, *aff'd*, 267 Or App 637, 342 P3d 181 (2014) (citing *Shaffer*, 17 Or LUBA at 933-40). Here, LUBA determined that the county's findings did not adequately support its conclusion relating to the first factor—that any permitted use would employ a small number of workers.

Aceti first argues that LUBA should not have applied the *Shaffer* test at all because the state agency overseeing land use planning, the Land Conservation and Development Commission, must have already determined that all the uses permitted in the County's RI zones are rural, not urban, when it acknowledged the County Plan. However, that argument was not raised before LUBA, and Aceti does not contend that LUBA committed plain error. *See Willamette Oaks, LLC v. City of Eugene*, 295 Or App 757, 765 & n 5, 437 P3d 314, *rev den*, 365 Or 192 (2019) (preservation requirement of ORAP 5.45(1) applies to review of LUBA orders and opinions; declining to exercise discretion to review for plain error in absence of request by appellant). Aceti also argues that LUBA misapplied the *Shaffer* test. However, Aceti has provided no basis under our standard of review that would permit us to displace LUBA's application of its own precedent.

For the foregoing reasons, the parties have not convinced us that LUBA erred in any respect.

Affirmed on petition and cross-petition.