No. 116 February 19, 2026 287

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

CENTRAL OREGON LANDWATCH,
*Petitioner,*

*v.*

DESCHUTES COUNTY
and Last Ranch, LLC,
*Respondents.*

Land Use Board of Appeals
2025034;
A188867

Argued and submitted January 6, 2026.

Carol Macbeth argued the cause for petitioner. Also on the brief was Central Oregon LandWatch.

Carrie A. Richter argued the cause for respondent Last Ranch, LLC. Also on the brief was Bateman Seidel Miner Blomgren Chellis & Gram, P.C.

No appearance for respondent Deschutes County.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Last Ranch, LLC (Last Ranch) was granted approval by the Deschutes County Board of Commissioners (county) to redesignate and rezone a parcel of land. That approval by the county included adoption of a post-acknowledgement plan amendment (PAPA) to the Deschutes County Comprehensive Plan (DCCP). Central Oregon LandWatch (LandWatch) opposed redesignation and rezoning of the property, and now seeks judicial review of a Land Use Board of Appeals (LUBA) final order and opinion. In three assignments of error, LandWatch argues that LUBA's decision is unlawful in substance. Specifically, LandWatch challenges LUBA's determination that redesignating and rezoning the land as "rural industrial" is consistent with Statewide Planning Goal 14 (Goal 14), which aims to ensure an orderly and efficient transition from rural to urban land use. Last Ranch responds that the county did not contravene Goal 14 and that LUBA's order was lawful. For the reasons provided below, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant background facts and procedural history are undisputed. The subject property is a roughly 20-acre parcel, previously designated Agricultural and zoned Exclusive Farm Use (EFU). It is located along Highway 97 and is not within an Urban Growth Boundary (UGB). The property is irregularly shaped and bisected by a rocky outcropping. The property is currently developed with a paved parking lot and 12 structures and was used until recently for a petting zoo and other animal attractions under a conditional use approval by the county. Last Ranch applied to redesignate and rezone the property from Agricultural and EFU to Rural Industrial (RI). LandWatch opposed the application. The county approved the application and LandWatch petitioned LUBA for review.

In its final order and opinion, LUBA agreed with LandWatch's argument that the county needed to further address Statewide Planning Goal 5, which related to development in scenic areas, and LUBA remanded on that basis. However, LUBA was unpersuaded by LandWatch's argument

that it was error to fail to conduct a site-specific, present-in-time, multifactor evaluation to determine whether applying the RI zone to the property would allow urban uses of rural land in contravention of Goal 14.

LUBA's final order and opinion stated, in relevant part,

"In the present case, the county did not conduct any site-specific analysis of whether the RI zone as applied to the subject property could allow urban uses, as described in [*1000 Friends of Oregon v. LCDC* (*Curry Co.*), 301 Or 447, 724 P2d 268 (1986) (*Curry County*) and *Shaffer v. Jackson County*, 17 Or LUBA 922 (1989) (*Shaffer*)]. Instead, the county cited a LUBA opinion, *Central Oregon Landwatch v. Deschutes County*, LUBA No 2022-075 (Dec 6, 2022), *aff'd*, 324 Or App 655, 525 P3d 895 (2023) (*Aceti V*), for the proposition that given the particular history of the county's RI zone, it can be applied to property without conducting a *Shaffer* analysis of consistency with Goal 14.

"The *Aceti V* case was the fifth and final round of appeals involving the county's longstanding attempt to apply the RI zone to rural land without taking an exception to Goal 14. In between rounds of appeals, the county engaged in legislative amendments to the RI zone and its governing comprehensive plan policies intended to ensure that the zone could not allow urban industrial uses on rural land, no matter the local circumstances in which the zone was applied. Those amendments included limitations on density and intensity that were well within safe harbor provisions that the Land Conservation and Development Commission (LCDC) had adopted for rural industrial uses within rural unincorporated communities. The newly amended RI zone and its supporting comprehensive plan policies were acknowledged to comply with statewide planning goals, including Goal 14. On appeal in the final *Aceti V* opinion, we rejected the petitioner's Goal 14 challenge, concluding that, given that legislative history, the amended RI and its supporting plan policies were 'independently sufficient' to demonstrate consistency with Goal 14, making it unnecessary for the county and LUBA to review a site-specific *Shaffer* analysis. *Aceti V*, LUBA No 2022-075 (slip op at 17-18). We re-affirmed that holding in the *LBNW* case. *See* [*Central Oregon LandWatch v. Deschutes County*], LUBA No 2023-008 [(Apr 24, 2023)] (slip op at 11-12) [(*LBNW*)]."

The order continues with LUBA's legal conclusion about whether the county's order sufficiently demonstrated compliance with Goal 14:

"Under those cases, the county can demonstrate that application of the RI zone to property is consistent with Goal 14, based solely on its legislative history, supporting plan provisions, and restrictions designed to limit the intensity of industrial uses below the minimal standards adopted by LCDC for industrial uses in rural unincorporated communities, without conducting a site-specific *Shaffer* analysis. In this appeal, [LandWatch] does not address either case, attempt to distinguish them, or argue (at least explicitly) that they should be overruled. Absent a developed argument that *Aceti V* and *LBNW* should be distinguished or overruled, we see no basis to reach a different conclusion in the present case."

LandWatch petitions for review of that order.

ANALYSIS

We review LUBA orders pursuant to ORS 197.850(9)(a) which provides that reversal or remand is warranted for various reasons, including when the order is "unlawful in substance."

We begin by describing the legal framework necessary to evaluate the arguments on appeal. LUBA shall reverse or remand a decision to adopt a PAPA if the amendment "'does not comply with the [Statewide Planning G]oals.'" *Ludwick v. Yamhill County*, 72 Or App 224, 230-31, 696 P2d 536, *rev den*, 299 Or 443 (1985) (quoting ORS 197.835). We give "some deference" to any interpretation by LCDC regarding the "meaning and application" of phrases within the Statewide Planning Goals. *Curry County*, 301 Or at 502.

Goal 14 requires that conversion of "rural land" to "urban uses" be "supported either by compliance with the requirements of Goal 14" or by the local governmental body taking an exception to that goal. *Id.* at 477. Goal 14 is not contravened if rural land is not converted to "urban uses." *Id.* Although LCDC might "decide that certain commercial and industrial uses, residential densities, levels of facilities, and parcel sizes are *per se* 'urban uses,'" *id.* at 507, more

frequently, consideration of multiple factors is necessary to determine whether a proposed amendment allows for "urban uses," *id.* at 502-511. *See also Hammack & Associates, Inc. v. Washington County*, 89 Or App 40, 42-46, 747 P2d 373 (1987) (discussing multiple factors such as location, lot size, use and appearance, potential impacts, and the need for services such as water or electricity, and agreeing with LUBA that a proposed outdoor amphitheater constituted an urban use).

In *Shaffer v. Jackson County*, 17 Or LUBA 922, 933-40 (1989), LUBA outlined relevant factors to consider in determining whether an industrial use is urban or rural. They include "whether the industrial use (1) employs a small number of workers, (2) is significantly dependent on a site-specific resource and there is a practical necessity to site the use near the resource, (3) is a type of use typically located in rural areas, and (4) does not require public facilities or services." *Central Oregon LandWatch v. Deschutes County*, 315 Or App 673, 679-80, 501 P3d 1121 (2021) (*Aceti IV*) (internal quotation marks and citation omitted).

In a prior opinion addressing the DCCP and the Deschutes County Code (DCC), we explained that in response to a line of cases—often referred to as the *Aceti* cases—in which a landowner also sought to redesignate and rezone land in Deschutes County as RI, the county amended the DCCP to allow RI zoning outside of existing exception areas, and when LandWatch appealed the amendment as inconsistent with Goal 14, LUBA affirmed. *Id.* at 676.

Under the DCC, certain uses are permitted outright on RI-zoned property, such as farming, primary processing of agricultural products, construction-related businesses, and welding. DCC 18.100.010. Additional conditional uses may be authorized, such as a concrete plant, petroleum storage, and pulp or paper manufacturing. DCC 18.100.020. Notably, RI-zoned properties are subject to DCC provisions that limit the extent and intensity of development. For example, buildings used for industrial uses are subject to a maximum size of 7,500 square feet. DCC 18.100.040(H). The DCCP policy 3.4.9 requires that any use on RI-zoned land must be "less intense than those allowed in unincorporated communities

\*\*\*." Furthermore, in 2002, LCDC acknowledged that the amendments to the DCC were consistent with Goal 14.

With that legal framework in mind, we begin by addressing LandWatch's first two assignments of error, which we review together.[1] In its first assignment of error, LandWatch argues that LUBA erred in concluding that the county has complied with Goal 14 requirements because LUBA did not require the county to "demonstrate in the present that the [PAPA] complies with Goal 14 \*\*\* directly" and without reliance "on past acknowledgment of the [county's] comprehensive plan" to illustrate compliance. In LandWatch's view, the Goal 14 portions of LUBA's final order and opinion do not comport with ORS 197.175(2)(a), which provides that each city and county "shall prepare, adopt, amend and revise comprehensive plans in compliance with goals approved by [LCDC]."

In its second assignment of error, LandWatch argues that LUBA's final order and opinion "is unlawful in substance in concluding a local jurisdiction could demonstrate compliance with Goal 14 by asserting that the proposed use 'was rural' rather than by showing compliance with Goal 14 by one of the three methods outlined by the Supreme Court in *Curry County*."

Last Ranch responds that "[t]he question of whether RI zoned uses applied through this decision are 'urban' or 'rural,' was fully vetted, is now settled law and serves to fully achieve Goal 14 compliance in this case." Last Ranch

---

[1] Last Ranch argues that LandWatch did not preserve its first assignment of error but concedes that it preserved its second assignment. At the same time, Last Ranch argues that all "three assignments of error contain so much overlap that they are difficult to distinguish."

We determine that both the first and second assignments of error are sufficiently preserved for appellate review. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court \*\*\*."). Both assignments of error relate to the adequacy of Goal 14 compliance. LandWatch raised similar arguments both to the county and to LUBA. For example, the recommendation and findings by the county's hearings officer include that LandWatch asserted that the PAPA "would constitute urbanization" and "that the county must further analyze" Last Ranch's application in relation to Goal 14. And in LandWatch's appeal to LUBA, it argued that the county's decision misconstrued ORS 197.175(2)(a) with regard to Goal 14 and that the county's Goal 14 analysis was insufficient.

also argues that LandWatch misconstrues *Curry County* and LUBA's *Shaffer* decision.

At bottom, the legal question is this: If LCDC has acknowledged that the permissible RI zone uses are not "urban uses," is the county required to conduct a site-specific, present-in-time evaluation of the property using the *Shaffer* test to show compliance with Goal 14? As explained below, the answer is no.

As indicated by LUBA in its discussion of the *Aceti V* case, LCDC has previously acknowledged that the uses allowed on properties zoned by the county as RI do not constitute "urban uses" and do not contravene Goal 14. That result is a logical one given that the county's comprehensive plan and other relevant provisions limit RI uses to those that are *less* intensive than what is allowed in unincorporated communities.

In the final order and opinion, LUBA concluded that reliance on a previous determination that all county RI uses are not "urban uses" is an adequate method to demonstrate that the PAPA at issue complies with Goal 14.[2] If the PAPA at issue rezones the property for RI uses—and *all possible RI uses* have been acknowledged as not "urban uses," it follows that the PAPA does not convert rural land to "urban uses" and Goal 14 is not contravened.

LandWatch argues that LUBA's reasoning is insufficient to demonstrate compliance with Goal 14 because the *Aceti* cases and *LBNW* cannot be reconciled with *Ludwick*, 72 Or App 224; *1000 Friends of Oregon v. Jackson Co.*, 79 Or App 93, 718 P2d 753, *rev den*, 301 Or 445 (1986); *Dept. of Land Conservation v. Clackamas County*, 335 Or App 205, 558 P3d 64 (2024), *rev den*, 373 Or 305 (2025) (*Clackamas County*); or *Curry County*, 301 Or 447.

We disagree. Having reviewed those cases, we are not persuaded that they undermine LUBA's determination

---

[2] As previously quoted, the final opinion and order provides that, under *Aceti V* and *LBNW*, the county can demonstrate compliance with Goal 14 "based solely on its legislative history, supporting plan provisions, and restrictions designed to limit the intensity of industrial uses below the minimal standards adopted by LCDC for industrial uses in rural unincorporated communities, without conducting a site-specific *Shaffer* analysis."

that the county did not have to conduct a *Shaffer* analysis of consistency with Goal 14. The county has endeavored to ensure that urban uses cannot occur on land zoned RI, including by limiting the density and intensity of uses on such land. Uses which are not "urban uses" do not contravene Goal 14, and the cases cited by LandWatch do not hold otherwise.

LandWatch argues that *Curry County* mandates a site-specific, present-in-time evaluation of the PAPA and the subject property to ensure Goal 14 compliance. *Curry County* requires that

> "once an objector has charged that a decision affecting 'rural land' outside [a UGB] is prohibited by Goal 14, a local government may do one of three things: (1) make a record *** that the decision does not offend the goal because it does not in fact convert 'rural land' to 'urban uses'; (2) comply with Goal 14 by obtaining acknowledgment of [a UGB] ***; or (3) justify an exception to the goal."

*Id.* at 477. The Supreme Court made clear that exceptions to Goal 3 (Agricultural Lands) and Goal 4 (Forest Lands) could not serve as substitutes for exceptions to Goal 14. *Id.* at 492-93. In so doing, the court explained that "an exception to Goal 3 or 4 does not, by itself, authorize particular uses of land" and that "exceptions and other 'regulating realities' do not limit uses in Goals 3 and 4 exceptions areas to 'rural'" uses. *Id.* at 486.

At the time that *Curry County* was decided in 1986, the court pointed out that the Statewide Planning Goals "do not define 'urban uses,'" and that question had not been resolved by LCDC, LUBA, or Oregon's appellate courts. *Id.* at 503-04. At that time, LCDC argued "that 'what is urban will depend greatly on the locale and the factual situation at a specific site,'" in part because the relative location between a subject property and existing "urban levels of facilities and services [like public water and sewer facilities]" is highly variable. *Id.* at 504. The court explained that LCDC "has the responsibility for developing consistent policies for evaluating what 'urban uses' means in different contexts." *Id.* at 506.

Subsequently, LCDC adopted provisions of OAR chapter 660, division 22, to provide clearer guidance to local

governments about "rural development outside [UGBs] \*\*\*." OAR 660-022-0000; *see also Clackamas County*, 335 Or App at 209 (explaining that OAR 660-004-0040 was adopted in response to *Curry County*).

Here, we determine that the final order and opinion on review can be read consistently with *Curry County*, and that any inconsistencies pointed to by LandWatch, such as a failure to justify an exception to Goal 14, are not such as to render the LUBA order unlawful. Whereas in *Curry County*, the Supreme Court determined that exceptions to Goals 3 and 4—which would not automatically prohibit "urban uses" in those areas—were insufficient to show compliance with or serve as exceptions to Goal 14, the RI zone at issue in this case has been acknowledged by LCDC as prohibiting "urban uses" on RI-zoned properties. That acknowledgment by LCDC is consistent with policies LCDC adopted in response to *Curry County*. Although LandWatch suggests that uses on land zoned RI could include "plastics factories and pulp manufacturing plants," as previously noted, the county's comprehensive plan includes policy 3.4.9, which requires the intensity of industrial uses in the RI zone to be below the minimal standard for industrial uses in unincorporated communities.

In *Aceti IV*, 315 Or App at 678-79, we held that LUBA did not err in determining that Deschutes County could show compliance with Statewide Planning Goal 6 "by evaluating the RI zone itself, as embodied in the [DCC]," and without conducting a site-specific, present-in-time evaluation of a development proposal for the property. We further explained that "LUBA's order [does not] hold that a local government can always show Goal 6 compliance by pointing to environmental regulations, only that in this case, the RI uses in the [DCC] are adequately limited." *Id.* at 678. Here, we reach a consistent conclusion: LUBA did not err in determining that redesignating or rezoning land in the county as RI is consistent with Goal 14 because the county has already amended its plan and code to limit the intensity of industrial uses in such areas and LCDC has acknowledged those amendments.

In its third assignment, LandWatch argues that "LUBA exceeded its authority under ORS 197.835 by writing its own Goal 14 findings and conclusions and reviewing those instead of reviewing the Goal 14 findings adopted by the county." We reject that assignment of error because it mischaracterizes LUBA's final order and opinion. We understand the portion of the LUBA decision that LandWatch challenges in its third assignment of error to be an explanation of why the county could rely on the history of amendments to its plan and code to show compliance with Goal 14.

We therefore affirm LUBA's final order and opinion and remand the case to the county to address LUBA's concerns about compliance with Goal 5.

Affirmed.